UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:23-CV-00067-GNS-HBB

LANNIE HARDEN                                                                    PLAINTIFF

v.

CITY OF CAMPBELLSVILLE KENTUCKY et al.                        DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 19),

Defendants' Motion for Leave (DN 18), and Plaintiff's Motion for Leave (DN 22).  The motions

are ripe for adjudication.

I.      **STATEMENT OF FACTS AND CLAIMS**

In November 2020, Plaintiff Lannie Harden ("Harden") began working for the City of

Campbellsville Kentucky ("City") as a Stormwater Director/MS4 Coordinator.  (Compl. ¶ 12, DN

1).  He was 69 years old when he began his employment, and he was classified as an at-will

employee.  (Compl. ¶ 12; Pedigo Aff. ¶ 50, DN 19-14).  On December 30, 2021, the recently-

appointed Mayor, Diane Ford-Benningfield ("Ford-Benningfield"),[1] terminated Harden.  (Defs.'

Mot. Summ. J. Ex. 16, at 1, DN 19-17).  The parties disagree on the reason for Harden's

termination.

---

[1] On October 19, 2021, Ford-Benningfield was appointed to serve as acting mayor for the
remaining 15 months of the term of former mayor, Brenda Allen ("Allen"), who resigned for health
reasons.  (Ford-Benningfield Aff. ¶ 2, DN 19-11); *see* Alexandra Brockman, *Campbellsville
Council Fills Mayor Vacancy*, The News-Enterprise (Oct. 23, 2021)
https://www.thenewsenterprise.com/news/state/campbellsville-council-fills-mayoral-
vacancy/article_617c6e60-6024-5fd2-8cc5-33f868508120.html (last visited Mar. 17, 2025).

The City and Ford-Benningfield maintain that she terminated Harden due to poor job performance. (Defs.' Mem. Supp. Mot. Summ. J. 7-8, DN 19-1). They assert that Harden failed to satisfy the requirements of the Stormwater Director/MS4 Coordinator position that included completing the 2020 MS4 storm water report in a timely and proper manner, even after two reminders. (Defs.' Mem. Supp. Mot. Summ. J. 7-8). Additionally, Harden did not perform other aspects of his job. (Defs.' Mem. Supp. Mot. Summ. J. 8).

Harden filed this action against the City and Ford-Benningfield (collectively the "Defendants"). (Compl. ¶¶ 1-2). Harden has asserted claims for violations of: (i) the Age Discrimination of Employment Act of 1967 ("ADEA") (as amended 29 U.S.C. § 621, *et seq.*); the Kentucky Civil Rights Act ("KCRA"), KRS Chapter 344; and KRS 341.990(6)(a). (Compl. ¶¶ 1, 23-31).

Harden alleges termination due to age discrimination because he was never disciplined or notified of performance issues prior to or when he was dismissed. (Compl. ¶ 16; Pl.'s Resp. Defs.' Mot. Summ. J. 1, 19, DN 23). Additionally, the City allegedly replaced Harden with an individual who was 14 years younger. (Compl. ¶ 16; Pl.'s Resp. Defs.' Mot. Summ. J. 1, 19). Also at issue is the City's response to Harden's application for Unemployment Insurance Income from the Kentucky Office of Unemployment Insurance ("OUI"). (Compl. ¶ 17). Harden asserts that Defendants knowingly made false statements or representations to prevent him from qualifying for Unemployment Insurance benefits. (Compl. ¶¶ 1, 27-31). Defendants claim the City did not oppose Harden's right to secure unemployment benefits, nor did it knowingly make a false statement regarding the circumstances that led to his termination. (Defs.' Mem. Supp. Mot. Summ. J. 32-35).

Defendants moved under Fed. R. Civ. P. 56(c) for summary judgment on all claims asserted in the Complaint. (Defs.' Mem. Supp. Mot. Summ. J., DN 18). Harden filed a response, and Defendants have replied. (Pl.'s Resp. Defs.' Mot. Summ. J., DN 23; Defs.' Reply Mot. Summ. J, DN 24).

## II.    JURISDICTION

The Court has subject matter jurisdiction of this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331. In addition, this Court has supplemental jurisdiction over Harden's state law claims. *See* 28 U.S.C. § 1367(a).

## III.    DISCUSSION

### A.    Defendants' Motion for Summary Judgment

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or

by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

### 1.    *ADEA Claim*

"Under both the ADEA, 29 U.S.C. § 623, and the KCRA, KRS 344.040(1), employers are prohibited from discharging or otherwise discriminating against any employee with respect to compensation, terms, conditions, or privileges of employment *because of* that individual's age." *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008) (emphasis added); *see Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2020) (quoting 29 U.S.C. § 623(a)(1)) (explaining that the ADEA "prevents employers from terminating an employee 'because of such individual's age.'"). Consequently, "[c]laims brought under the KCRA are 'analyzed in the same manner' as ADEA claims." *Allen*, 545 F.3d at 393 (quoting *Williams v. Tyco Elec. Corp.*, 161 F. App'x 526, 531 n.3 (6th Cir. 2006)); *see also Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky. 1984) (explaining "[t]he Kentucky age discrimination statute is specially modeled after the Federal law . . . , in this particular area we must consider the way the Federal act has been interpreted[,]" and apply federal caselaw when addressing a KCRA claim).

The Sixth Circuit has explained:

> To prevail on a claim under the ADEA, it is not sufficient for the plaintiff to show that age was a motivating factor in the [employer's] adverse action; rather, the ADEA's "because of" language requires a plaintiff to "prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision."

*Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)). A plaintiff may establish an ADEA violation through

direct or circumstantial evidence. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (internal quotation marks omitted) (citation omitted). By contrast, circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.* The Supreme Court has explained that regardless of whether the ADEA plaintiff relies on direct or circumstantial evidence, the burden of persuasion remains on the plaintiff to demonstrate "that age was the 'but-for' cause of the employer's adverse decision." *Gross*, 557 U.S. at 177-78 n.4.

Harden offers only circumstantial evidence of discrimination. (Pl.'s Resp. Defs.' Mot. Summ. J. 17). When evaluating circumstantial evidence claims under the ADEA, the Sixth Circuit utilizes the "the well-established *McDonnell Douglas* burden-shifting framework." *Miles*, 946 F.3d at 887 (citing *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006)); *Geiger*, 579 F.3d at 622. The *McDonnell Douglas* burden-shifting framework consists of three steps. First, the plaintiff must make a prima facie showing of age discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff satisfies this burden, then the employer must provide some legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Finally, if the employer meets this burden, then the plaintiff must demonstrate that the employer's proffered reason is simply a pretext for age discrimination. *Id.* at 804. If the plaintiff satisfies this burden, the factfinder may reasonably infer discrimination. *Miles*, 946 F.3d at 887 (citing *Moffat v. Wal-Mart Stores*, Inc., 624 F. App'x 341, 349 (6th Cir. 2015)).

### a.    Prima Facie Case

To make a prima facie showing of age discrimination Harden must demonstrate that:  1) he was a member of a protected class; 2) he was discharged; 3) he was qualified for the position held; and 4) he was replaced by a significantly younger person or Defendants treated a similarly situated and significantly younger employee more favorably.  *See Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 326 (6th Cir. 2021); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003); *Houf v. PNC Bank*, 5:21-311-KKC, 2024 WL 1315842, at *4 (E.D. Ky. Mar. 27, 2024).  "This light burden is 'easily met' and 'not onerous.'"  *Pelcha*, 988 F.3d at 326.  It is undisputed that Harden satisfies the first three elements of a prima facie case of age discrimination:  he is a member of the protected class as he was 71 years old at the time of termination; his termination was an adverse employment decision; and he was at least minimally qualified for the position of MS4 Coordinator.  (Defs.' Mem. Supp. Mot. Summ. J. 19).

Defendants contend that Harden cannot satisfy the fourth element because they did not replace him by hiring a significantly younger employee.  (Defs.' Mem. Supp. Mot. Summ. J. 19-20).[2]  Defendants rely on the affidavits of Ford-Benningfield and Josh Pedigo ("Pedigo"), the City's Public Works Director, to show that Harden's MS4 Coordinator position duties were temporarily assumed by Pedigo and a part-time co-worker from the City's finance division named Lewis Allen ("Lewis").  (Defs.' Mem. Supp. Mot. Summ. J. 12, 19-22; Ford-Benningfield Aff. ¶ 7; Pedigo Aff. ¶¶ 14, 15) (citing *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283-84 (6th Cir. 2012); *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990); *Houf*, 2024 WL 1315842,

---

[2] Additionally, Defendants point out that Harden testified he is not aware of anyone who was treated more favorably.  (Defs.' Mem. Supp. Mot. Summ. J. 20-22 (citing Harden Dep. 67:6-8, May 2, 2024, DN 19-2)).  Harden responds that he is not required to identify comparators that were treated differently to satisfy the fourth element.  (Pl.'s Resp. Defs.' Mot. Summ. J. 19 n.16).
.

at *5).  Additionally, Defendants posit that Lewis, who was 57 years old when he assumed the MS4 job duties, was not outside the protected class for age discrimination purposes.  (Defs.' Mem. Supp. Mot. Summ. J. 20 (citing *Miles*, 946 F.3d at 895)).

Harden responds that Defendants previously conceded that Harden was replaced by Lewis in the 2021 MS4 storm water report, the City's EEOC response, and in a memo in Lewis' personnel file.  (Pl.'s Resp. Defs.' Mot. Summ. J. 19 (citing Defs.' Mem. Supp. Mot. Summ. J. Ex. 14, DN 19-15; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. B, DN 23-3; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. O, DN 23-16)).  Harden also asserts that the fourth element is satisfied due to an age difference of 14-years between himself and Lewis.  (Pl.'s Resp. Defs.' Mot. Summ. J. 19 (citing *Grosjean*, 349 F.3d at 336, 340 (6th Cir. 2003))).

To satisfy the fourth element of a prima facie case, Harden must make a two-part showing: he was "replaced" and the replacement was a "significantly younger person."  *See Grosjean*, 349 F.3d at 335.  Each part is addressed below.

### i.    Replaced

A person "is replaced only when another employee is hired or reassigned to perform" his duties, regardless of whether there is a lapse in time between the termination date and the hiring or reassignment date.  *See Blizzard*, 698 F.3d at 284; *Barnes*, 896 F.2d at 1465 (a person is replaced only when another employee is hired or reassigned to perform that person's duties); *Houf*, 2024 WL 1315842, at *5 (the undisputed evidence showed the employer never hired anyone to replace the plaintiff).  Spreading the duties of a terminated employee among co-workers does not constitute replacement for purposes of an ADEA claim.  *See Blizzard*, 698 F.3d at 283-84; *Houf*, 2024 WL

1315842, at *5.  As explained below, whether Harden was "replaced" remains a fact question unsuited for resolution on summary judgment.

When the City hired Harden as the MS4 Coordinator it was a part-time position in the Storm Water Department.  (Defs.' Mem. Supp. Mot. Summ. J. Ex. 4, at 1, DN 19-5).  The City classified the position as Storm Water Director/MS4 Coordinator with duties including administrative and supervisory work pertaining to storm water drainage as well as the completion of the annual MS4 storm water report required by the Kentucky Division of Water ("KDOW").  (Defs.' Mem. Supp. Mot. Summ. J. Ex. 5, at 2, DN 19-6).  Beginning July 12, 2021, Harden's position became a full-time position.  (Harden Dep. 70:10-15; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. E, at 10, DN 23-6).  Harden remained a full-time employee until his termination on December 30, 2021.  (Ford-Benningfield Aff. ¶ 5; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. E, at 2).

The affidavits of Ford-Benningfield and Pedigo aver that Defendants did not replace Harden with a younger employee; instead, Lewis assumed the MS4 Coordinator duties on a part-time basis.  (Ford-Benningfield Aff. ¶ 7; Pedigo Aff. ¶ 14).  By contrast, the City's EEOC response stated that it replaced Harden with Lewis.  (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. B, at 1, 2, 9).  The City's EEOC response is itself inconsistent:  it indicates Lewis was hired "to the position of "Stormwater Director" but further states that Lewis "only works as the MS4 Coordinator[,]" and "the position of stormwater director still remains open to this day."  (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. B, at 2, 9).

Further, there are two memos from Pedigo to Ford-Benningfield in Lewis' personnel file indicating Lewis replaced Harden.  (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. O, at 1, 2).  The first, dated March 7, 2022, indicates that Lewis "will be transferring from the City Finance Manager to the Storm Water Director[,]" suggesting Harden's duties were reassigned to Lewis.  (Pl.'s Resp.

8

Defs.' Mot. Summ. J. Ex. O, at 2); *see Grosjean*, 349 F.3d at 336 (indicating a person is replaced when his duties are reassigned to another employee). Moreover, Harden also points out that he, too, began the position on a part-time basis. The second memo, dated November 21, 2023, advises that "[Lewis'] position [as] Storm Water Director" will "go to full time" starting January 1, 2024. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. O, at 1). This indicates, despite a lapse in time, the City ultimately completed the reassignment of Harden's position to Lewis. Additionally, the City's answer to Harden's application for unemployment insurance benefits affirmatively stated that the City terminated Harden and had since filled the position. (Defs.' Mem. Supp. Mot. Summ. J. Ex. 22, DN 19-23).

Consequently, Harden has identified sufficient evidence that he was replaced to require a jury to resolve at trial the parties' differing versions on this point. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). For this reason, the Court cannot rule that Harden has failed to establish the "replacement" prong in the fourth element of an ADEA prima facie case.

### ii.    Significantly Younger Person

Lewis and Harden were both within the protected class of workers over the age of 40. The issue then becomes whether the inference of age discrimination can be drawn from the determination that Lewis, at age 57, was significantly younger than Harden, who was 71 years old. *See Grosjean*, 349 F.3d at 335-36 ("In age discrimination cases, the protected class includes all workers at least 40 years old and the fourth element is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person."). The Sixth Circuit has observed that age differences of ten or more years have generally been held to be sufficiently substantial to meet the "significantly younger person" requirement of the fourth element of a prima facie age discrimination case. *See id.* at 336-37. Viewing the undisputed

evidence in the light most favorable to Harden, the fourteen-year age gap between Lewis and Harden is sufficient to satisfy this part of the fourth element of a prima facie age discrimination case. *See id.* at 336-37. The Court therefore finds that the second prong in the fourth element of an ADEA prima facie case is satisfied.

In sum, due to the disputed facts whether Harden was replaced by a younger worker, the Court cannot rule as a matter of law that Harden has failed to establish the fourth element of a prima facie age discrimination case under the ADEA and KCRA. Therefore, it is necessary to proceed to the next step of the analysis.

### b.    Legitimate Nondiscriminatory Reason

Defendants state that poor work performance was the nondiscriminatory basis for Harden's termination. (Defs.' Mem. Supp. Mot. Summ. J. 7-8, 22-24; Ford-Benningfield Aff. ¶ 6; Pedigo Aff. ¶¶ 8-12; Defs.' Mem. Supp. Mot. Summ. J. Ex. 15, at 1-3, DN 19-16). Ford-Benningfield attests that in keeping with the City's informal policy, she did not explain to Harden the reason why she terminated him. (Ford-Benningfield Aff. ¶ 5). Ford-Benningfield states: "I did not terminate Harden for any personal reason. I did not know Harden's age at the time of his termination. His age was a non-factor in his termination. Rather, he simply was terminated for not doing his job in a satisfactory manner." (Ford-Benningfield Aff. ¶ 6). Pedigo confirms his understanding that Ford-Benningfield terminated Harden due to poor work performance. (Pedigo Aff. ¶ 12). Pedigo also avows:

> Specifically, Harden did not properly or timely complete the MS4 report, did bare minimum inspections, did not do outfall screenings of industrial sites, and did not complete paperwork to comply with the Kentucky Division of Water requirements. The City received verbal complaints that Harden was overstepping his authority with contractors.

(Pedigo Aff. ¶ 12).  Both Ford-Benningfield and Pedigo substantiate their declarations by citing email warnings that Pedigo sent to Harden on March 12, 2021, and May 24, 2021, emphasizing the importance of timely completing and filing the MS4 report; and Pedigo's memo to Ford-Benningfield on December 27, 2021, discussing Harden's failure to timely complete and file the MS4 storm water report, and referencing the previous emails.  (Ford-Benningfield Aff. ¶¶ 4-6; Pedigo Aff. ¶¶ 8-10 (citing Defs.' Mem. Supp. Mot. Summ. J. Ex. 11, at 1, DN 19-12; Defs.' Mem. Supp. Mot. Summ. J. Ex. 12, at 1, DN 19-13; Defs.' Mem. Supp. Mot. Summ. J. Ex. 15, at 1-3)).  Defendants have satisfied their burden of explanation.  *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981) ("The defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  (internal citation omitted)).

### c.      Pretext

The Defendants having articulated a legitimate nondiscriminatory basis for the termination, Harden must demonstrate that the employer's proffered reason is simply a pretext for age discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973).  To satisfy his burden and survive summary judgment, Harden must "produce sufficient evidence from which a jury could reasonably reject [Defendants'] explanation of why [they] fired [him]."  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citation omitted).  This "is a commonsense question: did [] [Defendants] fire [] [Harden] for the stated reason or not?"  *Id.* at 400 n.4.  This requires a court to consider whether the employee has produced sufficient evidence from which a jury could reasonably reject the employer's explanation why it fired the employee.  *Id.* at 400.

"Plaintiffs typically show pretext in three interrelated ways:  '(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action,

or (3) that the proffered reasons were insufficient to motivate the employer's action.'" *Miles*, 946 F.3d at 888 (quoting *Chen*, 580 F.3d at 400)). These three categories are not the only ways that an employee can establish pretext. *See Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (citing *Chen*, 580 F.3d at 400 n.4). Rather, they are a "convenient way of marshaling evidence and focusing it on the ultimate inquiry: 'did the employer fire the employee for the stated reason or not?'" *Id.* (quoting *Chen*, 580 F.3d at 400 n.4). Although an employee remains free to pursue other arguments, the employee must articulate some cognizable explanation of how the evidence put forth establishes pretext. *See Miles*, 946 F.3d at 888. Harden's arguments, in effect, cover all three of the typical pretext categories.

Harden first contends that Defendants' proffered termination rationale is based on contrived evidence because Pedigo failed to place the email warnings and his memo to Ford-Benningfield in Harden's personnel file as required by City policy.[3] (Pl.'s Resp. Defs.' Mot. Summ. J. 20-21; Defs.' Mem. Supp. Mot. Summ. J. Ex. 7, DN 19-8). Harden also points out that Pedigo's emails and memo were not attached to the City's EEOC response to Harden's Charge of Discrimination before the EEOC. (Pl.'s Resp. Defs.' Mot. Summ. J. 20-21; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. B). According to Harden, Defendants first produced these three documents in discovery on September 23, 2023. (Pl.'s Resp. Defs.' Mot. Summ. J. 20-21; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. L, DN 23-13). Additionally, Harden points out that Defendants are unable to provide metadata for Pedigo's memo to Ford-Benningfield. (Pl.'s Resp. Defs.' Mot. Summ. J. 20-21; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. R, DN 23-19).

---

[3] Harden explains that when he received a copy of his personnel file on April 21, 2022, pursuant to his Freedom of Information Act request, it did not contain copies of the emails Pedigo sent to Harden in March and May 2021 or the memo sent to Ford-Benningfield in December 2021. (Pl.'s Resp. Defs.' Mot. Summ. J. 20-21; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. E).

Harden's assertion that Pedigo failed to follow the City's policies by not filing the three documents in Harden's personnel file is insufficient, standing alone, to establish pretext. *See White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 246 (6th Cir. 2005). For Harden's challenge to establish pretext, he must provide evidence that Defendants' evidence never existed. *See Miles*, 946 F.3d at 888-89. The City points out, however: (1) Pedigo's email warnings were copied to Harden's secretary Kristin Sexton, former City Clerk Cary Noe ("Noe"), and former Mayor Allen; (2) Noe's affidavit indicates she received both emails; (3) Pedigo states that he wrote the two emails and the memo to Ford-Benningfield, and attached copies of those emails to the memo; (4) Ford-Benningfield attests that she received and reviewed Pedigo's December 2021 memo with the attached earlier emails and, after a brief discussion with Pedigo, she made the decision to terminate Harden. (Ford-Benningfield Aff. ¶¶ 4-5; Defs.' Mem. Supp. Mot. Summ. J. Ex. 11, at 1; Defs.' Mem. Supp. Mot. Summ. J. Ex. 12, at 1; Pedigo Aff. ¶¶ 10-11; Noe Aff. ¶ 2, DN 24-1). Considering this evidence, no reasonable juror could find that Plaintiff's general assertions are sufficient to establish pretext.

Harden next contends there is no history of poor work performance, which was not Defendants' original rationale for his termination. (Pl.'s Resp. Defs.' Mot. Summ. J. 21-22). He attempts to substantiate his assertion by pointing out that the termination letter, dated December 30. 2021, does not provide an explanation for his termination. (Pl.'s Resp. Defs.' Mot. Summ. J. 21-22 (citing Defs.' Mem. Supp. Mot. Summ. J. Ex. 16, at 1)). Additionally, Harden cites his own testimony and his personnel file as evidence there is no history of poor performance. (Pl.'s Resp. Defs.' Mot. Summ. J. 21-22; Harden Dep. 48:15-25, 49:1-12; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. E). Further, Harden claims that nowhere in the City's EEOC response is poor performance alleged. (Pl.'s Resp. Defs.' Mot. Summ. J. 21-22; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. B).

A formal termination letter is not the only evidence that may be considered to determine the reasons for an employee's dismissal. *Blizzard*, 698 F.3d at 284. Again, the record contains the affidavits of Ford-Benningfield and Pedigo; Pedigo's two emailed warnings to Harden; and Pedigo's memo to Ford-Benningfield dated December 27, 2021, with attached copies of the earlier emails from March and May 2021. (Ford-Benningfield Aff. ¶¶ 5, 6; Pedigo Aff. ¶¶ 8-12; Defs.' Mem. Supp. Mot. Summ. J. Ex. 11, at 1; Defs.' Mem. Supp. Mot. Summ. J. Ex. 12, at 1; Defs.' Mem. Supp. Mot. Summ. J. Ex. 15, at 1-3). Moreover, the City's EEOC response unequivocally charged that Harden was "**A Substandard Employee**" because he "did not complete the comprehensive, multi-faceted MS4 report that was a large part of his job." (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. B, at 9). The City's EEOC response also indicates that Harden failed to perform various aspects of his job, conducted bare minimum inspections, did not conduct outfall screenings of industrial sites, did not complete paperwork to comply with Division of Water requirements, and that contractors complained Harden was overstepping his authority. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. B, at 9). This evidence shows a history of poor performance, consistent with Defendants' original rationale for Harden's termination, and fails to show pretext.

Harden's third attempt to show pretext involves an assertion that the KDOW report—which enumerates violations in the 2021 MS4 storm water report—did not actually motivate Defendants' decision to terminate him because it was issued three months after his termination. (Pl.'s Resp. Defs.' Mot. Summ. J. 22-23). Defendants counter that this post hoc evidence reinforces the soundness of Ford-Benningfield's belief that Harden was derelict with respect to the MS4 report, even if the KDOW report did not influence her decision to terminate Harden. (Defs.' Mem. Supp. Mot. Summ. J. 10-11, 23; Defs.' Mem. Supp. Mot. Summ. J. Ex. 17, DN 19-18). The KDOW report does not support a finding of pretext.

14

Harden's fourth attempt to show pretext relies on the "cat's paw" theory of liability to suggests that Pedigo, who lacked decision-making power, used Ford-Benningfield, the formal decision-maker, as a dupe in a deliberate scheme to wrongfully terminate Harden for Pedigo's failure to timely submit the 2020 MS4 storm water report. (Pl.'s Resp. Defs.' Mot. Summ. J. 23-24 (citing *Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 677 (6th Cir. 2008); *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 353 (6th Cir. 2012))).  The Sixth Circuit has held "when a plaintiff challenges his termination as motivated by a supervisor's discriminatory animus, he must offer evidence of a 'causal nexus' between the ultimate decisionmaker's decision to terminate the plaintiff and the supervisor's discriminatory animus." *Madden*, 549 F.3d at 677 (citation omitted).  Harden has not presented any evidence from which a reasonable factfinder could find that Pedigo exhibited age-based animus toward Harden.  Moreover, Harden has not satisfied the causal nexus requirement.  Considering the substantial evidence discussed above indicating Harden's work performance was substandard, no reasonable juror could find that Plaintiff's fourth argument establishes pretext.

Harden's fifth attempt to show pretext involves the two emails prepared by Pedigo concerning Harden's purported failure to complete timely the MS4 storm water report. (Pl.'s Resp. Defs.' Mot. Summ. J. 24-25) (citing Defs.' Mem. Supp. Mot. Summ. J. Ex. 11, at 1; Defs.' Mem. Supp. Mot. Summ. J. Ex. 12, at 1).  Harden asks if these emails are to be believed, why was he terminated months later on December 30, 2021.  (Pl.'s Resp. Defs.' Mot. Summ. J. 25).  Harden observes that there were no documented disciplinary actions from May 25, 2021, to December 26, 2021, he received a pay increase on July 1, 2021, he moved to full-time status on July 12, 2021, and he received the COVID-related bonus.  (Pl.'s Resp. Defs.' Mot. Summ. J. 25; Defs.' Mem. Supp. Mot. Summ. J. 3).  Harden asserts that his "rewarded performance and lack of discipline

permits an inference in his favor." (Pl.'s Resp. Defs.' Mot. Summ. J. 25). This argument ignores, however, that the raise and promotion occurred before Ford-Benningfield was appointed as mayor and that she was the one who decided to fire Hardin. The bonus was paid on December 21, 2021, which was six days before Pedigo's memo to Ford-Benningfield outlining Harden's performance deficiencies. (Defs.' Mot. Summ. J. Ex. 6, at 12, DN 19-7; Defs.' Mot. Summ. J. Ex. 15, at 1).

"A plaintiff may rely on 'temporal proximity in the pretext analysis as indirect evidence to support a pretext claim and rebut [a] proffered non-discriminatory reason for an adverse employment action.'" *Jividen v. Univ. of Tenn.*, 834 F. Supp. 2d 745, 758 (W.D. Tenn. 2011) (alteration in original) (quoting *Eades v. Brookdale Senior Living, Inc.*, 401 F. App'x 8, 13 (6th Cir. 2010)) (citing *Asmo v. Keane, Inc.*, 471 F.3d 588, 598 (6th Cir. 2006)). "That said, temporal proximity alone cannot prove pretext." *Id.* (citing *Brown v. City of Franklin*, 430 F. App'x 382, 387 (6th Cir. 2011); *Burks v. Yellow Transp.*, 258 F. App'x 867, 875 (6th Cir. 2008)). Here, Allen hired Harden for the MS4 Coordinator position, and she was advised of his poor work performance in connection with the MS4 storm water report through copies of Pedigo's emails to Harden. (Defs.' Mem. Supp. Mot. Summ. J. Ex. 11, at 1; Defs.' Mem. Supp. Mot. Summ. J. Ex. 12, at 1; Pedigo Aff. ¶¶ 8-9). The record is not sufficiently developed to ascertain why Allen allowed Harden to continue his employment, receive a $.40 per hour pay raise, and move to full-time status, but again Allen was not the decision-maker for Hardin's termination. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. B, at 2). The record does indicate that when Ford-Benningfield took over, she looked at Harden's poor work performance with a "fresh set of eyes." (Ford-Benningfield Aff. ¶¶ 2-6). Specifically, Pedigo sent the memo to Ford-Benningfield on December 27, 2021, explaining that there was an ongoing issue of poor work performance by Harden of his duties as the MS4 Coordinator and cautioned that the identified problems should not continue into the upcoming

calendar year.  (Ford-Benningfield Aff. ¶¶ 4-5; Pedigo Aff. ¶¶ 10; Defs.' Mem. Supp. Mot. Summ. J. Ex. 15).  Ford-Benningfield stated that she made the decision to terminate Harden after she reviewed the memo and emails, and had a brief discussion with Pedigo.  (Ford-Benningfield Aff. ¶¶ 4-5).  Consequently, Harden has not articulated a cogent explanation showing how this evidence establishes pretext.

Harden next argues that the City would not have been able to submit timely the 2021 MS4 storm water report on March 14, 2022, without Harden having already compiled everything prior to his termination on December 30, 2021.  (Pl.'s Resp. Defs.' Mot. Summ. J. 25-26) (citing Defs.' Mem. Supp. Mot. Summ. J. Ex. 14).[4]  As discussed above, however, the KDOW notified the City in March 2022 of deficiencies in the 2021 reporting, all of which occurred on Harden's watch. (Defs.' Mem. Supp. Mot. Summ. J. 7-8, 22-24; Ford-Benningfield Aff. ¶¶ 4-6; Pedigo Aff. ¶¶ 10-13; Defs.' Mem. Supp. Mot. Summ. J. Ex. 15, at 1).  Consequently, Harden has not articulated a cognizable explanation how this evidence establishes pretext.

Harden further asserts that Lewis was not disciplined when he failed to timely submit the 2022 MS4 storm water report.  (Pl.'s Resp. Defs.' Mot. Summ. J. 26-27 (citing Pl.'s Resp. Defs.' Mot. Summ. J. Ex. L; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. O, at 1; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. P, DN 23-17)).  The Sixth Circuit has instructed that to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his treatment "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Miles*, 946 F.3d at 893 (quoting *Mitchell v. Toledo Hosp.*,

---

[4] Harden suggests this inference is furthered by the fact that there are no additional emails/warnings from Pedigo to Harden regarding the 2021 MS4 storm water report; and Lewis did not replace Harden until March 7, 2022.  (Pl.'s Resp. Defs.' Mot. Summ. J. 25-26).

964 F.2d 577, 583 (6th Cir. 1992)).  While the failure to satisfy these requirements does not automatically destroy comparator status, "the plaintiff must show that [he] is similar to [his] proposed comparator in all relevant respects." *Id.* (quoting *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012)).  Notably, when courts apply the *Mitchell* factors they should be "aware of the closer correlation required for the comparators' conduct at the pretext stage" than at the prima facie stage.  *Id.* at 894.

Regardless of whether Lewis was responsible for the delay in filing the 2022 MS4 storm water report, there is no evidence indicating that Lewis exhibited the other poor work performance problems like Harden and which Ford-Benningfield considered when deciding to terminate Harden.  Consequently, Harden has not articulated a cognizable explanation how the evidence establishes pretext.

Defendants have provided a legitimate, nondiscriminatory reason for terminating Harden, which Harden has failed to rebut by establishing pretext.  Consequently, under the *McDonnell Douglas* analysis, Defendants are entitled to summary judgment on Harden's age discrimination claims under ADEA and KCRA.[5]

---

[5] In support of their motion, Defendants assert that the *Faragher/Ellerth* affirmative defense barred Harden's claims because:  (1) the City took reasonable steps to prevent and correct harassment by promulgating appropriate anti-discrimination policies that educate its employees about discrimination and advise them of their rights if they think they are the victim of workplace discrimination; and (2) Harden never utilized the City's grievance procedure, nor did he avail himself of the City's remedial protections.  (Defs.' Mem. Supp. Mot. Summ. J. 28-31 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc.*, 524 U.S. 742 (1998); *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 456 (6th Cir. 2008); *Morgan v. Triumph Aerostructures, LLC*, 296 F. Supp. 3d 911, 925 (M.D. Tenn. 2017); *Perry v. AutoZoners, LLC*, 954 F. Supp. 2d 599, 612 (W.D. Ky. 2013))).  Harden responds that "[t]he *Faragher/Ellerth* affirmative defense applies to claims for a hostile work environment/sexual harassment under Title VII."  (Pl.'s Resp. Defs.' Mot. Summ. J. 32 (citing *Faragher*, 524 U.S. at 787-88; *Ellerth*, 524 U.S. at 765; *Pa. State Police v. Suders*, 542 U.S. 129, 133-41 (2004); *Thornton*, 530 F.3d at 455-56)).  Further, Harden points out that Defendants do not "cite any application of *Ellerth/Faragher* to the ADEA or the KCRA let alone argue for its extension."  (Pl.'s Resp. Defs.' Mot. Summ. J.

2.      **Hickey** *Claim*

Following his termination, Harden applied for Unemployment Insurance Income from the OUI.  (Compl. ¶ 17).  Count II in the Complaint contends that Defendants knowingly made false statements or representations to prevent Harden from qualifying for unemployment insurance benefits, in violation of KRS 341.990(6)(a).  (Compl. ¶¶ 1, 27-31).  Under *Hickey v. General Electric Co.*, 539 S.W.3d 19 (Ky. 2018), Harden claims the City violated KRS 341.990(6)(a) by seeking to deprive him of unemployment benefits, for which he has a private action under KRS 446.070.

Defendants argue they are entitled to summary judgment on this claim as a matter of law because the City did not make any false statement to the OUI intending to prevent Harden from receiving unemployment insurance benefits.  (Defs.' Mem. Supp. Mot. Summ. J. 32-35 (citing *Popeck v. Rawlings Co.*, 791 F. App'x 535, 542 (6th Cir. 2019))).  Harden responds that he has submitted sufficient evidence "for a reasonable jury to infer that the Defendants sought to prevent Harden from receiving benefits."  (Pl.'s Resp. Defs.' Mot. Summ. J. 30 (citing *Popeck*, 791 F. App'x at 542)).

In *Hickey*, the Kentucky Supreme Court considered a question certified by this Court and concluded that a plaintiff may bring a private right of action under KRS 446.070 against his former employer for an alleged violation of KRS 341.990(6)(a), a criminal statute that prohibits a witness from knowingly making a false statement in unemployment insurance proceedings to prevent or reduce the payment of benefits.  *Hickey*, 539 S.W.3d at 20, 22-25.  In *Popeck*, the Sixth Circuit held the plaintiff must cite facts suggesting the former employer offered false statements with the

---

32).  Defendants appear to concede Harden's response by failing to reply to those arguments. Defendants have therefore waived this argument.

intention of preventing the plaintiff from receiving unemployment insurance benefits.  *Popeck*, 791 F. App'x at 542.

Consequently, for Harden to survive summary judgment, he must cite facts that to suggest the City made a statement to the OUI with the intention of preventing him from receiving benefits. *See id.*  To that end, Harden points to a modicum of circumstantial evidence:  (i) Ford-Benningfield never told Harden why he was terminated and so he noted that he was "laid off" on his application; (ii) Defendants were not required to submit a response to the OUI; (iii) Defendants submitted a false statement to the OUI; (iv) the false statement in turn led to a denial of benefits at the initial level because Harden was found to have been discharged for misconduct; (v) the City later confirmed Harden was not terminated for misconduct; (vi) the referee decision concluded as Harden was not terminated for misconduct and was entitled to benefits; and (vii) Harden did receive his benefits.  (Pl.'s Resp. Defs.' Mot. Summ. J. 28-29).  Harden reasons that he has presented sufficient evidence for a reasonable jury to infer Defendants sought to prevent him from receiving benefits.  (Pl.'s Resp. Defs.' Mot. Summ. J. 30).

The only direct evidence of the Defendants' intent stands unrebutted.  The City received a form from the OUI advising that Harden had applied for benefits on the grounds that he had been laid off due to lack of work.  (Defs.' Mem. Supp. Mot. Summ. J. Ex. 22).  The form notified the City that if Harden's employment ended for a different reason, the City was required to so indicate on the form and return it by mail or electronically within a specified number of days.  (Defs.' Mem. Supp. Mot. Summ. J. Ex. 22).  The City's Human Resources Manager Rhiannon McQueary ("McQueary") filled out and returned the form, advising that Harden "was not laid off due to lack of work[;]" he was "terminated due to not meeting job requirements."  (Defs.' Mem. Supp. Mot. Summ. J. Ex. 22).  McQueary's statement in full states:

> The employee was terminated due to not meeting job requirements. His main requirement was to create the MS4 Storm Water report, and he had done nothing related to this report. He was not laid off due to lack of work. This position that the employee was in still exists, and has since been filled. It was reiterated three times to the employee that this was a termination, not a lay-off.

(Defs.' Mem. Supp. Mot. Summ. J. Ex. 22).

McQueary's statement contains no inaccuracy. In fact, during the second unemployment hearing, the City's counsel explained to the referee that while Harden's failure to timely complete the MS4 storm water report may be a basis for termination, he "wouldn't consider that misconduct." (Unemployment Hearing 4:1-11, Nov. 11, 2022, DN 23-22). Further, the City's counsel assured the referee that the City had "no intention to try to block Mr. Harden's ability to get unemployment." (Unemployment Hearing 4:1-11). The referee decision reversed the Determination because the City "discharged [Harden] for reasons other than misconduct connected with the work" and Harden was not disqualified from receiving unemployment insurance benefits. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. W, at 1, DN 23-24).

In sum, the initial determination by the OUI was based upon erroneous findings, not the City's response, and the matter was later rectified by the referee. The only direct evidence of the City's intent stands unrebutted: the City was required to return the form with a statement indicating the reason Harden's employment ended, and McQueary's statement clearly indicated Harden was terminated due to poor work performance, not misconduct. Consequently, Defendants are entitled to summary judgment on this claim.[6]

---

[6] Defendants also seek summary judgment on Hardens' claims for front and back pay, emotional damages, and punitive damages (Defs.' Mem. Supp. Mot. Summ. J. 35-38). The Court need not address this portion of Defendants' motion as summary judgment is granted as to both claims raised in the Complaint.

**B.**     **Motions for Leave**

The parties have moved for leave to file a motion and response longer than permitted by

LR 7.1(d).  Because the requests appear reasonable, these motions are granted.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.     Defendants' Motion for Summary Judgment (DN 19) is **GRANTED**, and the

Complaint (DN 1) is **DISMISSED WITH PREJUDICE**.

2.     Defendants' Motion for Leave (DN 18), and Plaintiff's Motion for Leave (DN 22)

are **GRANTED**.

3.     The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

March 21, 2025

cc:        counsel of record

22